## SHIELDS ET AL. *v.* UTAH IDAHO CENTRAL RAILROAD CO.

No. 28. Argued October 19, 1938.—Decided December 5, 1938.

*Solicitor General Jackson,* with whom *Assistant Attorney General Arnold,* and *Messrs. Hugh B. Cox, Robert L. Stern,* and *Daniel W. Knowlton* were on the brief, for petitioners.

*Messrs. J. A. Howell* and *Robert E. Quirk* for the respondents. *Messrs. J. H. DeVine* and *Neil R. Olmstead* were with *Mr. Howell* on the brief.

By leave of Court, briefs of *amici curiae* were filed by *Mr. Wm. D. Whitney* on behalf of the Hudson & Man-

hattan Railroad Co., and by *Messrs. Robert E. Quirk* and *Claude D. Cass* on behalf of the American Transit Assn., in support of the respondent.

Mr. Chief Justice Hughes delivered the opinion of the Court.

This case presents the questions of the effect of a determination by the Interstate Commerce Commission, for the purposes of the Railway Labor Act, that the respondent is not an interurban electric railway, and of the scope of judicial review of that determination.

The Railway Labor Act, which applies to railroads engaged in interstate commerce, excepts any "interurban" electric railway unless it is operating as a part of a general steam-railroad system of transportation.[1] The Interstate Commerce Commission is "authorized and directed upon request of the Mediation Board or upon complaint of any party interested to determine after hearing whether any line operated by electric power" falls within the exception. At the request of the Mediation Board, the Interstate Commerce Commission after hearing determined that the lines of respondent, the Utah Idaho Central Railroad Company, do not constitute an interurban electric railway. 214 I. C. C. 707. The Mediation Board ordered respondent to post the formal notice prescribed by § 2, Eighth, of the Railway Labor Act.[2] Respondent did not comply. Failure to publish the notice subjects "the carrier, officer or agent offending" to criminal penalties.[3] Respondent, insisting that its line is an interurban electric railway and thus excepted from the Railway Labor Act, and alleging the invalidity of the Act, brought this suit against the United States Attorney for the District of

---

[1] 48 Stat. 1185; 45 U. S. C. 151
[2] 45 U. S. C. 152, Eighth.
[3] 45 U. S. C. 152, Tenth.

Utah to restrain him from prosecuting any proceeding based upon an alleged violation of the Act.

The District Court took jurisdiction, permitted respondent to try the question *de novo,* decided that respondent was an interurban electric railway, and granted a permanent injunction. The Circuit Court of Appeals affirmed. 95 F. 2d 911. We granted certiorari.

As respondent, however characterized, is engaged in interstate transportation, the question whether it should be subjected to the requirements of the Railway Labor Act relating to the adjustment of labor disputes, was one for the decision of Congress. These requirements were prescribed in the exercise by Congress of its constitutional control over interstate commerce. *Texas & New Orleans R. Co.* v. *Railway Clerks,* 281 U. S. 548; *Virginian Railway Co.* v. *System Federation No. 40,* 300 U. S. 515. As Congress was free to establish the categories which should be excepted, Congress could bring to its aid an administrative agency to determine the question of fact whether a particular railroad fell within the exception, and Congress could make that factual determination, after hearing and upon evidence, conclusive. *St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38, 51. For that purpose Congress could create a new administrative agency or use one already existing. And as the questions of fact involved would relate to methods of railroad transportation, and thus to a field in which the Interstate Commerce Commission had peculiar expertness, Congress could fittingly commit the determination to that body.

Congress did not define the term "interurban." Despite the desirability of such a definition [4] and the diffi-

---

[4] Annual Reports of Interstate Commerce Commission, 1921, p. 21; 1923, p. 70; 1924, p. 78; 1925, p. 72; 1928, p. 83; 1929, p. 80; to which reference is made in *United States* v. *Chicago North Shore & M. R. Co.,* 288 U. S. 1, 11, 12.

culties occasioned by its absence, the term is not so destitute of meaning that it can be denied effect as a valid description. Respondent, standing upon the exception, necessarily treats it as valid and hence as susceptible of application. That view presupposes that the term "interurban" denotes distinguishing factual characteristics which on appropriate inquiry may be ascertained. We have so treated the term in other relations. *Piedmont & Northern Ry. Co.* v. *Interstate Commerce Comm'n,* 286 U. S. 299; *United States* v. *Chicago North Shore & M. R. Co.,* 288 U. S. 1. The conferring of authority upon the Interstate Commerce Commission to determine whether a particular electric railway is an interurban one cannot be regarded as an unconstitutional delegation of power. See *United States* v. *Chicago North Shore & M. R. Co., supra,* at pp. 13, 14.

In the instant case, the Interstate Commerce Commission has made the determination contemplated by the statute and we are not concerned with the questions which might arise in its absence. The Commission's determination was one of fact. *Shannahan* v. *United States,* 303 U. S. 596, 599. What effect shall be ascribed to it? The argument is pressed that the determination is at best persuasive and not in any wise binding upon the courts. It is urged that the Commission was restricted to determining whether respondent was operated as a part of a general steam-railroad system of transportation, which concededly it was not; that the determination of the Commission was not an "order"; that Congress has not manifested an intention that the determination should be binding in judicial proceedings and that in the nature of things it could not be made binding in criminal prosecutions.

We are unable to agree with the view expressed in the court below that the Commission was confined to determining whether respondent was operated as a part of a

general steam-railroad system of transportation. Before reaching that point—as to which there was no question—the Commission had to determine whether respondent was an "interurban" line. That has been the administrative construction of the statutory provision [5] and we see no reason to doubt its correctness.

In considering the effect of the Commission's determination, the fundamental question is the intent of Congress. The language of the provision points to definitive action. The Commission is to *"determine."* The Commission must determine *"after hearing."* The requirement of a "hearing" has obvious reference "to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts." The "hearing" is "the hearing of evidence and argument." *Morgan* v. *United States,* 298 U. S. 468, 480. And the manifest purpose in requiring a hearing is to comply with the requirements of due process upon which the parties affected by the determination of an administrative body are entitled to insist. *Interstate Commerce Comm'n* v. *Louisville & Nashville R. Co.,* 227 U. S. 88, 91. The Commission is not only authorized but "directed" to give the hearing and make the determination when requested. We cannot think that a determination so prescribed and safeguarded was intended to have no legal effect. On the contrary, in view of the nature and purpose of the proceeding, we must regard the determination as binding on both the carrier and the Mediation Board. The latter having obtained the determination could not ignore it; neither could the carrier.

We have held that the determination of the Commission is not an *"order"* reviewable under the Urgent De-

---

[5] See Texas Electric Railway, 208 I. C. C. 193; Chicago South Shore & South Bend Railroad, 214 I. C. C. 167; Utah Idaho Central Railroad Co., 214 I. C. C. 707.

ficiencies Act of October 22, 1913.[6] *Shannahan* v. *United States, supra.* But we have not held that the determination of the Commission was not subject to judicial review by other procedure, a question which, as we said in the *Shannahan* case, we had no occasion there to consider. *Id.,* at p. 603. The nature of the determination points to the propriety of judicial review. For, while the determination is made by the Interstate Commerce Commission for the purposes of the Railway Labor Act and not for further proceedings by the Commission itself, it is none the less a part of a regulatory scheme. It has the effect, if validly made, of subjecting the respondent to the requirements of the Railway Labor Act, which was enacted to regulate the activities of transportation companies engaged in interstate commerce.[7] The Mediation Board has ordered the posting of the prescribed notice that disputes between the carrier and its employees will be handled under the Railway Labor Act. Disobedience is immediately punishable and it is made the duty of the United States Attorney to institute proceedings against violators. Respondent has invoked the equity jurisdiction to restrain such prosecution and the Government does not challenge the propriety of that procedure. Equity jurisdiction may be invoked when it is essential to the protection of the rights asserted, even though the complainant seeks to enjoin the bringing of criminal actions. *Philadelphia Company* v. *Stimson,* 223 U. S. 605, 621, 622; *Truax* v. *Raich,* 239 U. S. 33, 37, 38; *Terrace* v. *Thompson,* 263 U. S. 197, 214. To support its contention that equitable relief is appropriate, respondent points to the peculiar difficulties which confront it

[6] 38 Stat. 208, 219, 220; 28 U. S. C. 41, 46, 47.

[7] Compare *Great Northern Ry. Co.* v. *United States,* 277 U. S. 172, 180; *Butte, Anaconda & Pacific Ry. Co.* v. *United States,* 290 U. S. 127.

under the congressional legislation. Congress has enacted two sets of statutes which involve the application of the same criterion. If respondent is subject to the Railway Labor Act, it is excluded from the application of the National Labor Relations Act; [8] otherwise not. The Railroad Retirement Act of 1937 [9] has a like proviso excepting interurban electric railways and authorizing the Interstate Commerce Commission to determine whether a particular electric railway falls within the exception. A similar provision is found in the Carriers Taxing Act of 1937 [10] and in the Railroad Unemployment Insurance Act of 1938.[11] In these circumstances we think respondent was entitled to resort to equity in order to obtain a judicial review of the questions of the validity and effect of the Commission's determination purporting to fix its status.

What is the scope of the judicial review to which respondent is entitled? As Congress had constitutional authority to enact the requirements of the Railway Labor Act looking to the settlement of industrial disputes between carriers engaged in interstate commerce and their employees,[12] and could include or except interurban carriers as it saw fit, no constitutional question is presented calling for the application of our decisions [13] with respect

---

[8] 49 Stat. 449, § 2 (2).

[9] 50 Stat. 307.

[10] 50 Stat. 435.

[11] 52 Stat. 1094. See, also, the provision of § 9 (a) of the Carriers Taxing Act of 1937, 50 Stat. 439, with respect to the application of the term "employment" as defined in Title VIII of the Social Security Act, § 811 (b).

[12] *Texas & New Orleans R. Co.* v. *Railway Clerks*, 281 U. S. 548; *Virginian Railway Co.* v. *System Federation No. 40*, 300 U. S. 515.

[13] *Ohio Valley Water Co.* v. *Ben Avon Borough*, 253 U. S. 287, 289; *Prendergast* v. *New York Telephone Co.*, 262 U. S. 43, 50; *Bluefield Water Works Co.* v. *Public Service Comm'n*, 262 U. S. 679, 689; *Tagg Bros. & Moorhead* v. *United States*, 280 U. S. 420, 443, 444; *Phillips*

to a trial *de novo* so far as the character of the respondent is concerned. With respect to that question, unlike the case presented in *United States* v. *Idaho,* 298 U. S. 105, where the Interstate Commerce Commission was denied the authority to determine the character of the trackage in question (*Id.,* p. 107), the Commission in this instance was expressly directed to make the determination. As this authority was validly conferred upon the Commission,[14] the question on judicial review would be simply whether the Commission had acted within its authority. *Interstate Commerce Comm'n* v. *Union Pacific R. Co.,* 222 U. S. 541, 547; *Interstate Commerce Comm'n* v. *Louisville & Nashville R. Co.,* 227 U. S. 88, 91; *Virginian Railway Co.* v. *United States,* 272 U. S. 658, 663; *Tagg Bros. & Moorhead* v. *United States,* 280 U. S. 420, 444; *Florida* v. *United States,* 292 U. S. 1, 12; *St. Joseph Stock Yards Co.* v. *United States, supra.*

The condition which Congress imposed was that the Commission should make its determination after hearing. There is no question that the Commission did give a hearing. Respondent appeared and the evidence which it offered was received and considered. The sole remaining question would be whether the Commission in arriving at its determination departed from the applicable rules of law and whether its finding had a basis in substantial evidence or was arbitrary and capricious. *Id.* That question must be determined upon the evidence produced before the Commission.

Taking that position, petitioners unsuccessfully objected in the District Court to the admission of new evidence. But that evidence was substantially the same

v. *Commissioner,* 283 U. S. 589, 600; *Crowell* v. *Benson,* 285 U. S. 22, 60; *State Corporation Comm'n* v. *Wichita Gas Co.,* 290 U. S. 561, 569.

[14] See *United States* v. *Chicago North Shore & M. R. Co.,* 288 U. S. 1, 13, 14.

as that produced before the Commission, which was also received. The facts carefully analyzed by the Commission (214 I. C. C. pp. 709–711) are virtually undisputed. Respondent's railway extends from Ogden, Utah, north to Preston, Idaho, a distance of 94.63 miles and has two branch lines of about 7 and 14 miles respectively. About 81.8 per cent. of the line is located on privately owned right-of-way and the remaining 18.2 per cent. on public streets or highways, these being chiefly in fifteen cities and towns. The Government concedes the point stressed by respondent that its line has many of the physical characteristics of an interurban railroad. Thus its tracks on the whole are of lighter weight, its grades slightly steeper, its curves sharper, its stations and sidetracks more frequent, its motive power of less capacity, its side-tracks shorter than is customary on trunk lines, and its passenger business is conducted in the same manner as that of any interurban electric railway. The passenger business, however, yields but a minor part (about 18.1 per cent.) of the total revenues. During the five years from 1930 to 1934, inclusive, the freight revenues amounted to $2,021,724.57 and the revenues from passengers, mail and express were $448,941.62. The railway is predominantly a carrier of freight. The freight traffic consists to a large extent of raw products such as sugar beets, milk, tomatoes and peas moving to factories, canneries or processing plants, and of the manufactured products moving outbound from the plants to connecting railroads. A considerable part of the movement of the raw products requires special service with one-car or two-car trains. A daily package-merchandise train is maintained, with facilities for refrigeration in summer and heating in winter and with pick-up and delivery service at all available points. In 1934 the freight trains averaged 6.2 cars each. In the last half of that year the

carrier handled 6,354 carloads of freight of which 2,226 were local and 4,017 were interchanged with other carriers. The traffic originating on its line moved to points in 31 States and that delivered by it was from points in 26 States. Respondent is a party to practically all the tariffs publishing through rates to or from this territory and its interchange traffic generally moves on joint rates. It does not perform intermediate service between other lines. Practically all the interchange traffic is handled in standard equipment furnished by connecting railroads.

It cannot be said upon this evidence, and the related facts summarized in the Commission's report, that the Commission's determination lacked support or was arbitrary or capricious. Nor is there ground for holding that the Commission in reaching its determination departed from applicable principles of law. There is no principle of law which required such a carrier to be classified as an interurban railway. Failing in its effort to obtain a clarifying definition from Congress, the Commission performed its duty in weighing the evidence and reaching its conclusion in the light of the dominant characteristics of respondent's operations which were fairly comparable to those of standard steam railroads. Compare *Piedmont & Northern Ry. Co.* v. *Interstate Commerce Comm'n, supra,* pp. 308–310; *United States* v. *Chicago North Shore & M. R. Co., supra,* p. 10.

We conclude that the District Court erred in permitting a trial *de novo* of that issue and that the determination of the Commission was within its authority validly exercised. The decree of the Circuit Court of Appeals is reversed and the cause is remanded to the District Court with direction to dismiss the bill of complaint.

*Reversed.*

MR. JUSTICE BLACK concurs in the result.