## HARTFORD GAS CO. v. SECURITIES AND EXCHANGE COMMISSION.

### No. 250.

Circuit Court of Appeals, Second Circuit.
July 16, 1942.

Robinson, Robinson & Cole, of Hartford, Conn. (Barclay Robinson and Frank Chapman, both of Hartford, Conn., of counsel), for petitioner.

Parker Bailey, of New York City, and Chester T. Lane, Gen. Counsel, Christopher M. Jenks, Ass't. Gen. Counsel, and Homer Kripke, Sp. Counsel, all of Washington, D.C., for respondent.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The Hartford Gas Company, a Connecticut corporation, is a public utility company operating in Hartford, Conn., and vicinity and wholly within the State of Connecticut. It has, under § 24(a) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79x, brought this petition to review an order of the Securities and Exchange Commission denying its application under § 2(a) (8) of the Act for a finding and order by the Commission that it is not a subsidiary either of the United Corporation, or of the United Gas Improvement Company, or of the Connecticut Gas and Coke Securities Company, which are all registered holding companies, and that it is, consequently, not subject to the provisions of the Act applicable to subsidiary companies of registered holding companies. Previously the petitioner applied to this Court for an order directing the Commission to hear further evidence. The application was granted and additional evidence was taken without resulting in any recommendation for the modification of the order.

The Commission found upon undisputed evidence that the United Gas Improvement Company is a subsidiary of the United Corporation and that the Connecticut Gas and Coke Securities Company is a subsidiary of the United Gas Improvement Company. These two subsidiaries of the United Corporation together own 21.98% of the voting stock of the petitioner.

Under § 2(a) (8) (B) of the Act the petitioner is, therefore, because of the above stated ownership of its voting stock a subsidiary company subject to regulation under the Act unless the Commission shall by order declare the contrary in accordance with the following part of the above section.

"The Commission, upon application, shall by order declare that a company is not a subsidiary company of a specified holding company under clause (A) if the Commission finds that (i) the applicant is not controlled, directly or indirectly, by such holding company (either alone or pursuant to an arrangement or understanding with one or more other persons) either through one or more intermediary persons or by any means or device whatsoever, (ii) the applicant is not an intermediary company through which such control of another company is exercised, and (iii) the management or policies of the applicant are not subject to a controlling influence, directly or indirectly, by such holding company (either alone or pursuant to an arrangement or understanding with one or more other persons) so as to make it necessary or appropriate in the public interest or for the protection of investors or con-

sumers that the applicant be subject to the obligations, duties, and liabilities imposed in this title [chapter] upon subsidiary companies of holding companies."

The Commission failed to find that the proof before it satisfied the conditions of subdivision (iii) above and accordingly refused to make the order relieving the petitioner from complying with the provisions of the Act as a subsidiary of a specified holding company which the above mentioned ownership of its voting stock otherwise made it under the statute. It was incumbent upon the petitioner to bring itself within the statutory exception it relied upon. Electric Bond & Share Co. v. S. E. C., 2 Cir., 92 F.2d 580, 592; Detroit Edison Co. v. S. E. C., 6 Cir., 119 F.2d 730, 739; S. E. C. v. Sunbeam Gold Mines Co., 9 Cir., 95 F.2d 699, 701; Schlemmer v. Buffalo, Rochester & Pittsburgh R. Co., 205 U.S. 1, 10, 27 S.Ct. 407, 51 L.Ed. 681. And, as the findings are by § 24(a) made conclusive if supported by substantial evidence, Rochester Telephone Corp. v. United States, 307 U.S. 125, 146, 59 S.Ct. 754, 83 L.Ed. 1147, the main problem presented is whether or not there is such support.

We should first notice, however, the contention that because the petitioner is an intrastate supplier of gas to its customers the Commission has no jurisdiction. In so doing it relies on Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, and Ohio Valley Water Co. v. Ben Avon Borough et al., 253 U.S. 287, 40 S.Ct. 527, 64 L.Ed. 908. But those cases are clearly distinguishable. The rule of Crowell v. Benson is limited to the facts needed to give the Commission jurisdiction to determine private rights. The admitted fact that a registered holding company owns ten per cent or more of petitioner's stock is enough to support the Commission's jurisdiction to determine, in the public interest, whether or not it is entitled to be immune from the provisions of the Act. No constitutional question is here involved nor has the Commission undertaken any regulatory action in respect to the petitioner. Compare, Shields v. Utah Idaho Central R. R. Co., 305 U.S. 177, 59 S.Ct. 160, 83 L. Ed. 111, and Detroit Edison Co. v. S. E. C., 6 Cir, 119 F.2d 730.

Turning now to the principal issue we find that the petitioner is in effect asking us to weigh the evidence and to decide de novo whether it shows, under our own conception of what should be given credence and treated as preponderating where there are conflicts, that the petitioner should in our judgment obtain the order it seeks. That is precisely what we lack the power to do. Swayne & Hoyt, Ltd., v. United States, 300 U.S. 297, 57 S. Ct. 478, 81 L.Ed. 659; National Labor Relations Board v. Quality Art Novelty Co. Inc., 2 Cir., 127 F.2d 903. Compare, American Sumatra Tobacco Corporation v. S. E. C., 71 App.D.C. 259, 110 F.2d 117.

A review of the evidence within the limits permitted as above does not disclose that the order lacked substantial evidential support. The three subdivisions of clause B, already quoted, are in the conjunctive and failure to come within any one would be fatal to the petitioner's cause. Subdivision iii calls for a showing of extreme negation. Its requirement is no less than that of preponderating proof that "the management or policies of the applicant are not subject to a controlling influence, directly or indirectly, by such holding company * * * so as to make it necessary or appropriate in the public interest or for the protection of investors or consumers that the applicant be subject to the obligations, duties, and liabilities imposed in this title [chapter] upon subsidiary companies of holding companies. * * *" Decision by the Commission involved both the weighing of the evidence to establish the actual facts and the weighing of the facts against the background of what is "necessary or appropriate in the public interest or for the protection of investors or consumers." And the latter is something which the Commission is so peculiarly adapted to do that its conclusion is final provided there is a "rational basis" for it. Mississippi Valley Barge Co. v. United States, 292 U.S. 282, 287, 54 S.Ct. 692, 78 L.Ed. 1260.

To avoid being included within the statutory obligations and duties which the 21.98% holding of its stock by the United Gas Improvement Company and its subsidiary holding company, Connecticut Gas and Coke Securities Company, which are in this connection properly treated as one, the petitioner has shown that the Connecticut Power Company, which is wholly independent of the named holding companies, owns 21.4% of its voting stock; that the Travelers Insurance Company, likewise independent, owns 6.67% and that the remainder is widely held; that its board of

directors consists of five local men, a representative of the Connecticut Power Company, one of the Travelers Insurance Company, one of the United Gas Improvement Company [1] and the petitioner's president, Mr. Bertolette who testified that United Gas Improvement did not control or supervise the petitioner. There were, however, other considerations which were relevant to the issue of whether or not the petitioner's management or policies were subject, directly or indirectly, to such a controlling influence.

Mr. Bertolette had been the president of one of the subsidiaries of the United Gas Improvement Company for some five years before he became president of the petitioner and had been employed in that system still longer. Though he was selected for the latter position by the petitioner's directors only after a canvass of available and competent men which included some outside the influence of the United Gas Improvement Company, there was ample reason to believe that his personal contacts with that company were as close as though he had been selected without any competition. He, as might be expected, obtained advice from his former associates rather frequently at first and employed a United Gas Improvement Company engineer to help in respect to changes he made in the petitioner's business methods. For some years the petitioner submitted a preliminary draft of its annual budget to the United Gas Improvement though none was sent to the Connecticut Power Company which had almost as large a stock interest. The given reason for such submission of preliminary drafts to the United Gas Improvement Company was to aid it in making up its own budget but that it could have been for a broader reason is obvious.

Perhaps something more significant in determining whether the petitioner was free from being subject to any direct or indirect controlling influence of the United Gas Improvement Company is to be found in the history of the manner in which it has obtained the gas it sells to its customers. In 1925 the petitioner, then making its own water gas, negotiated with the Koppers Company of Pittsburgh, Pa., concerning the erection by the latter of a plant in Hartford to produce coke oven gas for the petitioner. After that had been agreed to, Koppers decided to put its plant in New Haven instead of Hartford and it was agreed by all concerned that its subsidiary for that purpose, the Connecticut Coke Company, would sell gas to the New Haven Gas Light Company, to a subsidiary of the United Gas Improvement Company called the Connecticut Light and Power Company and to the petitioner who would be supplied with it through mains of the Connecticut Light and Power Company which supplied some of its own customers through mains of the petitioner. While these negotiations were in progress and in the fall of 1926, the holding company subsidiary of the United Gas Improvement Company, the Connecticut Gas and Coke Securities Company, was organized and it obtained a majority stock interest in the New Haven Gas Light Company and a 10.67% stock interest in the petitioner. The Koppers Company, which was independent of the United Gas Improvement Company, guaranteed, on October 1, 1926, the dividends for twenty-five years on the preferred stock of the Connecticut Gas and Coke Securities Company held by the public and on July 11, 1927, the United Gas Improvement Company guaranteed Koppers against loss on its guarantee. Thus it came about that the United Gas Improvement Company which had up to 1940 spent over $311,000.00 in fulfilling its guarantee has more of an interest in the conduct of the petitioner's business than its ownership of the petitioner's stock would alone give it since it must make good on the preferred dividends of the Connecticut Gas and Coke Securities Company to the extent that the latter is not supplied with funds for that purpose by reason of its ownership of the stock of the petitioner and of the New Haven Gas Light Company. The community of interest of the two subsidiaries of the United Gas Improvement Company, viz., The New Haven Gas Light Company and the Connecticut Light and Power Company with the petitioner in respect to their dealings with the subsidiary of Koppers Company, the Connecticut Coke Company is apparent. The cost of the gas the petitioner purchased from the latter amounted to 58% of all its regular operating expenses before 1940 when the price was reduced through negotiations largely carried on by United in behalf of its two subsidiaries and the petitioner.

---

[1] At the supplemental hearing it was shown that the representative of The United Gas Improvement Company had resigned.

The petitioner proved at the supplemental hearing held under the order of this court that in April, 1941, the United Gas Improvement Company ceased to be a stockholder in the Connecticut Light and Power Company; that since September, 1941, it has had no representative upon the petitioner's board of directors; that preliminary drafts of its budget are no longer to be submitted to the United Gas Improvement Company and that communications between these two companies are less frequent than formerly. All this does, indeed, make weight against the conclusions of the Commission but it was to be considered with the other evidence in its proper relation to the whole and for the reasons already stated can be treated by us only as raising conflicting inferences which have been resolved by the Commission.

Affirmed.