## SMITH LAND CO. v. CHRISTENSEN et al.
### No. 3056.

Circuit Court of Appeals, Tenth Circuit.
March 2, 1945.

E. J. Skeen, of Salt Lake City, Utah (J. D. Skeen, of Salt Lake City, Utah, on the brief), for appellant.

Joseph B. Zimowski, Atty., Department of Agriculture, of Washington, D. C. (Dan B. Shields, U. S. Atty., and Scott M. Matheson, Asst. U. S. Atty., both of Salt Lake City, Utah, and J. Stephen Doyle, Jr., and W. Carroll Hunter, Sp. Assts. to Atty. Gen., on the brief), for appellees.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

Smith Land Company, a corporation, is engaged in the growing of wheat in Box

Elder County, Utah. Pursuant to the provisions of the Agricultural Adjustment Act of 1938, as amended, 52 Stat. 31, 52 Stat. 202, 53 Stat. 1126, 53 Stat. 1261, 54 Stat. 392, 54 Stat. 727, 54 Stat. 1209, 54 Stat. 1211, 55 Stat. 88, 55 Stat. 203, 55 Stat. 860, 55 Stat. 872, 56 Stat. 51, 56 Stat. 121, 56 Stat. 653, 7 U.S.C.A. §§ 1281 et seq., 1301 et seq., and the regulations promulgated under it, the county agricultural committee gave written notice to the company of its farm marketing quota and farm marketing excess in wheat for the year 1941. The company protested but a formal decision was rendered determining the excess. An appeal was taken to the district review committee, and the excess was confirmed, in a reduced amount. In accordance with Section 365 of the Act, 7 U.S.C.A. § 1365, the company instituted this action in the United States Court for Utah against the members of the district review committee to obtain a review of the determination. The prayer was that the determination be vacated and set aside, and that the defendants be enjoined from claiming a lien against the wheat of the company. Following a pre-trial conference, the court remanded the proceeding to the district review committee for additional hearing into newly discovered evidence, and for further hearing, if desired by the company, upon matters previously heard by the committee; and the additional hearing was had. The defendants filed with the clerk of the court a duly certified transcript of the entire proceedings before the committee, together with the findings of fact, conclusions, and determination of the committee. After final hearing, the court entered an order in which the determination of the review committee was affirmed. The company appealed.

At the time of the filing of the complaint in this action, the excess wheat subject to penalty was in storage in a warehouse in accordance with the regulations of the Secretary of Agriculture. A written stipulation was filed in the case which provided that the warehouseman might sell 700 bushels of the wheat and retain the proceeds of the sale in lieu of the wheat, and that the sale should be without prejudice to the rights of either party to the action. The court approved the stipulation and an order was entered authorizing the sale in accordance with its provisions. The wheat was sold, and other wheat—belonging to the warehouseman—was substituted for it in the warehouse. Thereafter all of the wheat of the company was sold and the money representing the penalty was appropriately impounded. The Secretary subsequently suspended wheat marketing quotas and released from penalty all excess wheat then in storage. When the cause came on for hearing in the court below, the company moved that the penalty on 700 bushels of the wheat be released. The court denied the motion, and that action is assigned as error. Section 365, 7 U.S.C.A. § 1365, supra, authorizes a producer of wheat who is dissatisfied with the determination of the review committee to file a bill in equity in the United States Court for the purpose of obtaining a review of the determination. And section 366, 7 U.S.C.A. § 1366, provides that the review shall be limited to questions of law; that the findings of fact by the review committee shall be conclusive, if supported by substantial evidence; that the case shall be heard and determined upon the record of the hearing or hearings before the review committee; and that the court shall affirm the determination of the committee, or remand the proceeding to the committee, with directions. The case was not a commonplace one in which the court was clothed with its ordinary jurisdiction, legal or equitable. It was a special statutory proceeding in which jurisdiction extended only to review the action of the review committee. The review committee did not have anything to do with the imposition of the penalty or the release of it. That was entirely beyond the duties and functions of the committee. Since the court was required by the statute to hear and determine the case upon the record of the proceedings before the review committee, and to affirm the determination of the committee or remand the proceeding to the committee with directions, apart from issues presenting claims of constitutional right, new issues of fact could not be injected into it. Tagg Bros. v. United States, 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524; Shields v. Utah Idaho Central R. Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111.

For another reason the motion was not well taken. Section 372 of the Act, 7 U.S.C.A. § 1372, provides that all penalties on surplus wheat shall be collected and remitted to the Secretary of Agriculture and be by him covered into the general fund of the Treasury of the United States; and that if a claim for refund is filed with the Secretary within one year after payment of the penalty to him, and he finds that such

penalty was erroneously, illegally, or wrongfully collected and that the claimant bore the burden of its payment, the Secretary of Agriculture shall certify to the Secretary of the Treasury for payment such amount as he finds the claimant is entitled to receive. The method thus provided by Congress for obtaining refund for a penalty imposed upon surplus wheat is exclusive. It cannot be had by motion and order in a special statutory proceeding of this kind.

■■ Section 366 of the Act, 7 U.S.C.A. § 1366, provides that the findings of the review committee shall be conclusive on review in a proceeding of this kind, if they are supported by substantial evidence. But here the findings of the committee as to the usual wheat acreage of the company are challenged on the ground that they were based upon speculation, and that uncontradicted evidence of actual acreage was arbitrarily ignored. The committee based its findings of the usual acreage of the company for the purpose of the allotment for the year 1941 on the amount of land seeded to wheat for harvest in the years 1937 and 1939. The figure arrived at as the acreage for 1937 was obtained from official aerial photographs. The photographic maps were studied and the determination made of the acreage in wheat in that year. The figure used in arriving at the acreage seeded for harvest in 1939 was based upon a written statement of the company. Virtually all of the evidence on which the company relies in respect of the actual acreage is testimony given by the president of the company. He testified concerning the acreage seeded to wheat for harvest in the two years mentioned, the amount of volunteer wheat, the yield per acre, and other related factors. But his testimony was in large measure from memory, and it was freighted with inconsistencies and conflicts. In view of the kind and character of the testimony, the review committee was not required to base its findings thereon. Instead, the committee was well within its prerogatives in predicating its findings on the studies of the official maps for one year and on the written state-

ment of the company for the other year. The findings of the committee are supported by substantial evidence and therefore are conclusive in this proceeding.

■ It is further contended that the district review committee erroneously refused to consider the average annual acreage of the company seeded to wheat during three or more consecutive years of the period 1935-1940 as the basis for the wheat allotment of the company for the year 1941. It is provided by regulation, 7 Fed.Reg.1941 Supp. § 728.212, that as the basis for apportionment, the county committee shall first determine for each farm a usual acreage of wheat; and that such acreage shall be the annual acreage of wheat seeded for harvest during three or more consecutive years of the period 1935-1940, determined pursuant to instructions issued by the Administrator of the Agricultural Adjustment Administration. But the regulation does not end there. It further provides that if in respect of any farm, the county committee finds that the acreage seeded to wheat in any of the years in that period was abnormally low due to extreme flood or drought, was not typical of the farm for 1941 due to customary crop-rotation practices, a change in such practices, or a change in the acreage of cropland in the farm, or was abnormally high due to failure of crops other than wheat, such year shall be eliminated; and that if for any of such years no data are available, such year shall also be eliminated. The record indicates clearly that the review committee was of the opinion that the evidence and testimony and other available data relating to wheat acreages of the company for the years 1938 and 1940 were not accurate or reliable. Reference has already been made to the nature of the testimony adduced by the company. The committee was warranted in excluding those years and basing its determination of average annual acreage on the acreage seeded to harvest in the years 1937 and 1939.

Affirmed.