**HUDSON RIVER DAY LINE, Inc. et al. v. UNITED STATES et al.**

United States District Court
S. D. New York.
July 1, 1949.

Lord, Day & Lord, New York City (Parker McCollester, Frank J. Clark and John R. Mahoney, New York City, of counsel), for plaintiffs Hudson River Day Line, Inc., and Sutton Line, Inc.

Herbert C. Jones, Jr., Washington, D. C. (Parker McCollester, New York City, of counsel), for Wilson Line Operating Co., intervening plaintiff.

Herbert A. Bergson, Assistant Attorney General, John F. X. McGohey, United States Attorney, New York City, William J. Hickey, Special Assistant to Attorney General, for defendant United States.

Edward M. Reidy, Assistant Chief Counsel, Samuel R. Howell, Attorney, and Daniel W. Knowlton, Chief Counsel, Washington, D. C., for Interstate Commerce Commission, intervening defendant.

Kenneth R. Thompson, New York City, for Sandy Hook, Inc., intervening defendant.

Before AUGUSTUS N. HAND, Circuit Judge, and BONDY and CLANCY, District Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiffs have applied for a preliminary and permanent injunction to restrain the Interstate Commerce Commission from carrying out an order of May 26, 1949, which granted temporary authority to Sandy Hook, Inc., to operate as a common carrier in furnishing special charter service between points in New York Harbor and Bear Mountain, New York, on May 27 and 28, June 1, 3, 4, 10, 11, 14, 26, July 24, August 14, and September 11, 1949, and between New York and West Point on June 2, 1949. Wilson Line Operating Company was allowed to intervene as an additional party plaintiff, and the Interstate

Commerce Commission and Sandy Hook, Inc., as additional parties defendant. The authority was sought and issued under the provisions of Section 311(a) of the Interstate Commerce Act, 49 U.S.C.A. § 911(a).

Although Section 311(a) requires no hearing, on March 25 and 26, 1949, the Commission held a hearing on the application of Sandy Hook, Inc., for a temporary permit for the operation of special charter service from May 16 to September 15, 1949, between New York and Bear Mountain and West Point. Testimony was received on behalf of Sandy Hook, Inc., in support of its application, and on behalf of Hudson River Day Line, Sutton Line, Inc., and Wilson Line Operating Company, steamboat corporations which already possessed certificates authorizing them to operate as water carriers between the above points and which were opposed to the projected competition by Sandy Hook, Inc. The Commission denied the application of Sandy Hook, Inc., in an order dated May 13, 1949, which incorporated a report containing findings of fact and conclusions of law, without prejudice, however, to a pending proceeding by Sandy Hook, Inc., to obtain authority to charter its vessels to groups desiring service to Bear Mountain or West Point on particular dates. On May 18, the Commission made an order in the latter proceeding granting authority for the dates May 20, 21, and 22, but otherwise denying the application.

Upon a petition by Sandy Hook, Inc., for reconsideration of the Commission's order of May 13, the Commission vacated that order and made the order of May 26, which we have referred to above. The plaintiffs thereupon asked for reconsideration of the order of May 26. The Commission denied their request by order of June 7, 1949, and the plaintiffs also seek relief against the latter order.

It appears from the testimony before the Commission that the plaintiffs and other protestants against the license which Sandy Hook, Inc., sought had no vessels available for exclusive charter on two of the dates in question, namely, June 26 and July 24; that for the dates of May 27, 28, June 3, 4, 10, 14, August 14, and September 11, relatively small groups of excursionists were to be carried for which the plaintiffs' larger vessels might be unsuited for reasons of expense or otherwise. The largest group to be carried upon the last-named dates comprised only a thousand persons and the others varied from 400 to 800. The groups to be carried on June 1, 2, and 11, were 1500, 1200 and 1900, respectively. None of these groups required vessels of the size owned by the protestants. The vessels of the Hudson River Day Line ranged from 2,783 passenger-carrying capacity to 5,252; the vessel of Sutton Line, Inc., would accommodate 2,746 passengers, and the two vessels of Wilson Line Operating Company approximately 3,000 each. The Sandy Hook Line owned the vessel Sandy Hook, which would carry 1,976 passengers and had chartered the Depew, which would carry 940 passengers.

There was clearly evidence tending to show that the Sandy Hook had vessels better fitted to carry groups of from 400 to 1900 excursionists than the much larger vessels of the protestants, because the excursion fares for exclusive use of the smaller vessels were likely to be less, and there was evidence that in many cases excursionists preferred to go as a compact group having an entire vessel and not be mingled with other groups or with the general public traveling on a regular schedule. As Mr. Olcott, the former president of Hudson River Day Line—which has since been succeeded by Hudson River Day Line, Inc., the present plaintiff—said at the hearing: "Well, of course we had on most of our boats a minimum charter through the week of thirteen hundred dollars and a minimum charge of about sixteen or seventeen hundred dollars on Saturday, and we didn't have any boats for charter on Sunday so that there were many times where a small party would not like to pay that amount of money for a boat because our boats all had a capacity between twenty-seven hundred and fifty-two hundred." [Record, p. 27].

It further appeared from the testimony that in 1947 and 1948 the Hudson River Day Line was unable to carry all the excursion parties with which it had contracts and chartered a vessel of the Sandy Hook

Line on eight occasions in 1947 and seven in 1948 to supply its needs. There was also evidence that the Hudson River Day Line turned away excursion parties in 1947 and 1948 because of inability to furnish the excursion service that was requested.

While the Commission rejected the application of Sandy Hook, Inc., for authority to operate throughout the entire summer season, it expressly reserved consideration as to specific dates and promptly granted authority for three days in May. The effect of the order of May 26 was to supplant the order of May 13 by an order granting authority to conduct excursions on further specific days. The Commission had before it when making the order of May 26 not only the prior record, but the further uncontradicted claim by Sandy Hook, Inc., that the largest vessel of Hudson River Day Line was laid up and the statement of the latter that it would not be used unless business demands justified its employment. It was also urged by Sandy Hook, Inc., that it had contracted in good faith to carry various groups on the days in question, that tickets had been sent out to excursionists therefor and that trips had been advertised by the groups among their members. The new point was also brought up by Sandy Hook, Inc., that it was the only organization which could furnish hot meals. In answer to the latter statement Hudson River Day Line said that it had installed a cafeteria on its vessels.

Upon the evidence adduced at the original hearing and also the new evidence as to the laying up of the largest steamer of Hudson River Day Line and the embarrassment to the excursion groups resulting from the disarrangement of their plans, the Commission on May 26 vacated its former report and order, and found that "there is an immediate and urgent need for the service specified * * * and that there is no other carrier service available to perform such service." In its order of June 7 denying reconsideration, the Commission also found that the vessels of Hudson River Day Line and Sutton Line, Inc., were not suited to the needs of the groups desiring charter service on those days when such vessels were available. The same conclusion was derivable from the evidence as to the Wilson Line vessel of a 3000 passenger-carrying capacity which was not under charter on July 11, and the failure of the Commission to refer to the Wilson Line in its order of June 7 was apparently because the latter had not asked for a reconsideration of the order of May 26.

In our opinion, the Commission was asked to reconsider its order of May 13 and furnished with new facts as to the laying up of the Hendrik Hudson and the outstanding arrangements which Sandy Hook, Inc., and its customers had made for certain excursion dates in the season. There can be no doubt that the Commission had the power to change its decision on reconsideration irrespective of the additional data submitted to it, provided that its final conclusion was supported by substantial evidence in the record taken as a whole. Manufacturers Ry. Co. v. United States, 246 U.S. 457, 482, 38 S.Ct. 383, 62 L.Ed. 831; Beard-Laney Inc. v. United States, D.C.E.D.S.C.1949, 83 F.Supp. 27.

We hold that there was substantial evidence before the Commission justifying its final conclusions that there was an immediate and urgent need for the services authorized and that there was no carrier other than Sandy Hook, Inc., available to meet that need, within the meaning of Section 311(a), which is set forth in the margin.[1]

It is argued by the plaintiffs that there was no immediate or urgent need

[1] "To enable the provision of service for which there is an immediate and urgent need to a point or points or within a territory having no carrier service capable of meeting such need, the Commission may, in its discretion and without hearings or other proceedings, grant temporary authority for such service by a common carrier by water or a contract carrier by water, as the case may be. Such temporary authority shall be valid for such time as the Commission shall specify, and shall create no presumption that corresponding permanent authority will be granted thereafter."

within the meaning of the statute. We think that such an interpretation unduly narrows the power of the Commission to respond to public demands. We cannot believe that a sudden emergency such as a strike which might tie up railroads or bus lines would not be sufficient to justify the exercise of the Commission's power to authorize water carriers to relieve the resulting shortage of transportation. The opening of a new oil field requiring transportation facilities is an additional illustration of urgent need which was suggested by Commissioner Eastman in his argument before Congress in connection with the enactment of a similar statute affecting motor carriers. It is argued that picnics and excursions stand in a different category, but if the failure to supply such means of popular recreation would result in thwarting the legitimate pursuits of large numbers of the public, we cannot see that excursions differ from transportation necessary to forward ordinary business pursuits, except in degree. Within reason, the determination of such matters should be wholly in the hands of the Interstate Commerce Commission which alone is given authority to deal with those matters. It is irrelevant whether or not we would have reached the same conclusion as the Commission did on the record before us; it is enough that its conclusions were supported by substantial evidence.

We may add that the statute granting the power to the Commission requires no hearing and that its procedure must necessarily be somewhat informal and fitted to deal with immediate situations. Here, some of the projected excursions were to be on dates very soon after May 26. It can hardly be expected that a broad power to give temporary relief on a few dates where no hearing at all was required should involve greater consideration and analysis than was given by the Commission—certainly not by a revising court.

It is argued by plaintiff's counsel that the questions whether the need was urgent and whether it could be met by existing water carriers holding licenses are judicial questions which must be determined by us as though we were the triers of fact rath-er than the Commission. We do not agree with this contention and think it is sufficiently answered by the following decisions of the Supreme Court. Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301; Shields v. Utah Idaho Central Railroad Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111. See also remarks of Mr. Justice Frankfurter in his concurring opinion in Estep v. United States, 327 U.S. 114, at pages 142-43, 66 S.Ct. 423, 90 L.Ed. 567; Schenley Distillers Corp. v. United States, D.C., 50 F.Supp. 491, 496.

We see no indication that the Commission acted arbitrarily or without authority. Accordingly, the injunctions prayed for are denied and the suit is dismissed. Settle decree on five days' notice.