**PUBLIC UTILITY DISTRICT NUMBER ONE OF STEVENS COUNTY, WASH. et al. v. UNITED STATES SECURITIES AND EXCHANGE COMMISSION.**

No. 13243.

United States Court of Appeals
Ninth Circuit.

March 14, 1952.

Justin N. Reinhardt, Portland, Or. (Alfred H. Stoloff, Portland, Or., of counsel), for petitioners.

Roger S. Foster, General Counsel, Securities and Exchange Commission, Myron S. Isaacs, Chief Counsel, Securities and Exchange Commission, Div. of Public Utilities, Washington, D. C., for respondent.

Before STEPHENS, ORR and POPE, Circuit Judges.

POPE, Circuit Judge.

The petitioners, describing themselves as persons aggrieved, have filed their petition pursuant to § 24(a) of the Public Utility

Holding Company Act of 1935, 15 U.S.C.A. § 79x,[1] for a review by this court of an order of the United States Securities and Exchange Commission dated January 18, 1952, and entitled "Notice of and Order for Hearing with respect to Feasibility of Proposed Sale of Stock of the Washington Water Power Company and Hearing Pursuant to Section 11(d) [15 U.S.C.A. § 79k(d)], with Respect to Plan for Distribution of such Stock". The order in question directed that a hearing be held on January 28, 1952, upon what the Commission therein designated a "declaration" with respect to a proposed sale of the common stock of Washington Water Power Company by American Power & Light Company, a registered holding company, to the petitioner Public Utility Districts.

The order recited that the hearing should relate not only to the question whether "said declaration should be denied effectiveness", but also to the question whether the terms and provisions of an alternate plan for distribution of the Washington stock to the stockholders of American are fair and equitable and may appropriately be approved by the Commission.[2]

Upon application of petitioners this court granted a stay of the Commission's order. Thereafter the Commission moved to dismiss the petition for review and to vacate the stay upon the ground that the order in question is not final; that the questions stated therein are not ripe for judicial review but that the order merely commits the Commission to "look into the matter" and until the proposed hearing is held, no final reviewable order will exist. In general, it is asserted that the petition presents no substantial basis for challenging the Commission's authority to take the action sought to be reviewed.

The petition discloses that in 1942 the Commission issued an order directing that the existence of American be terminated and that it be dissolved.[3] Pursuant to that order American divested itself of the bulk of its assets and at the present time its principal remaining asset consists of the entire common stock of Washington Water Power Company (herein called Washington). In February, 1951, American filed with the Commission an earlier notice of a proposed sale of its Washington stock to these same Public Utilities Districts. In

1. "Sec. 24(a) Any person or party aggrieved by an order issued by the Commission under this title may obtain a review of such order in the circuit court of appeals of the United States within any circuit wherein such person resides or has his principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the entry of such order, a written petition praying that the order of the Commission be modified or set aside in whole or in part. * * *"

2. After preliminary recitals the Notice and Order stated: "Notice is therefore given that the Commission, pursuant to the provisions of Rule U-44(c), has determined that American should file a declaration with respect to the proposed sale of the common stock of the Washington Company and that, pursuant to the provisions of the notice given by American to the Commission with respect to such sale dated December 26, 1951, said notice is hereby treated as American's declaration with respect to the proposed transaction.

"It Is Hereby Ordered that a hearing

shall be held upon such declaration, together with a hearing to determine whether the terms and provisions for the distribution of the Washington Company stock set forth in the plan filed by American on November 5, 1951 (see Holding Company Act Release No. 10919) are fair and equitable and may appropriately be approved by the Commission as a plan pursuant to Section 11(d) of the Act.

"It Is Further Ordered that the hearing shall be limited initially to determining whether the terms and provisions of the Section 11(e) plan filed by American on November 5, 1951, or any amendment thereto, should be approved in the event that the declaration pursuant to Rule U-44(c) is not permitted to become effective, and whether said declaration should be denied effectiveness as not presenting a transaction susceptible of reasonably prompt consummation. Any other questions presented by said declaration are reserved."

3. The order was upheld in American Power Co. v. S. E. C., 1946, 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103.

consequence of that notice, the Commission held hearings upon the issues (1), "whether the Commission has jurisdiction * * * to require that a declaration be filed by American with respect to the proposed transaction", and (2), "whether if the Commission has such jurisdiction it would be appropriate in the light of the provisions of § 2(c) [15 U.S.C.A. § 79b(c)], and other applicable provisions of the Act, for the Commission to require that a declaration be filed."

After the hearing the four participating Commissioners divided evenly in their votes and hence were unable to determine whether a declaration should be filed. On the same date the consummation of the proposed transaction was enjoined by the Superior Court of the State of Washington, and no appeal having been taken, that injunction became final.

On October 15, 1951, the Commission approved a plan for the distribution to the holders of American's capital stock of its excess cash amounting to $2.00 per share. In the order the Commission noted that certain stockholders of American had urged an immediate distribution of Washington stock to American stockholders and requested the Commission to apply to an appropriate United States District Court to bring the dissolution previously ordered to a conclusion. The Commission also noted the time which had elapsed since the original order of dissolution had been made in 1942, and the differences of view among American's stockholders with respect to selling the stock of Washington to the Public Utilities Districts. It concluded that it was not justified in having recourse at

that time to a court for the appointment of a trustee, and said: "However, we cannot permit this condition of stalemate to continue indefinitely. * * * Since it is recognized that a sale of the stock may not occur, we should guard against the risk that distribution may be delayed beyond the time actually necessary to explore the opportunities to effect a sale." It was ordered that : "American file with the Commission, within 20 days hereof, a plan which provides for the distribution of the Washington stock promptly after January 1, 1952, in the event American has not filed, by that date, a notification of sale of the Washington stock pursuant to Rule U-44(c)."

Complying therewith, American, on November 5, 1951, filed its alternative plan for distribution to its stockholders of common stock of Washington. It included a provision that the filing of a notice of sale to Public Utility Districts would constitute a withdrawal of its alternative plan. On December 26, 1951, American filed the notice of proposed sale to Public Utility Districts which is referred to in the order with respect to which review is sought here. It was filed pursuant to Commission Rule U-44(c).[4] The notice recited: "American also believes that the Commission has no jurisdiction over the merits of any part of the proposed transaction." This statement was followed with an allusion to § 2(c) of the Act, 15 U.S.C.A. § 79b(c), which provides: "No provision in this title shall apply to, or be deemed to include, the United States, a State, or any political subdivision of a State, or any agency, authority, or instrumentality of any one or more

---

4. "Sales pursuant to order or plan under section 11.—No registered holding company or subsidiary thereof shall, directly, or indirectly, sell or otherwise dispose of any security, asset, or other interest in any business which it is required to dispose of by reason of any order of this Commission under section 11(b) of the Act, or pursuant to the provisions of any plan pending or approved under section 11(e) of the Act, unless it shall have given at least 10 days' notice to the Commission of its intention to make such sale or other disposition and (1) No notice shall have been given

to said company by the Commission within said 10-day period that a declaration should be filed with respect to the proposed transaction, or notice shall have been given by the Commission within said 10-day period that no declaration is required; or (2) A declaration filed by the company with respect to such transaction shall have been permitted to become effective by order of the Commission. Provided, That the provisions of this paragraph (c) shall not apply to any transaction as to which a declaration is required under paragraph (a) of rule U–43 or paragraph (a) of this rule."

of the foregoing, or any corporation which is wholly owned directly or indirectly by any one or more of the foregoing, or any officer, agent, or employee of any of the foregoing acting as such in the course of his official duty, unless such provision makes specific reference thereto." The notice also stated: "In the event that the Commission holds that American should file a declaration with respect to the proposed transaction, American, without waiving the contentions made above and expressly reserving the right to contest any determination by the Commission that it has jurisdiction over the merits of any part of the proposed transaction, stipulates that this notice may be treated as a declaration."[5]

The filing of this notice was followed by the notice and order of January 18, 1952, of which review is sought here.

In attacking the order, the substance of which is set forth in footnote 2 supra, petitioners assert that it was definitive, final and reviewable because it amounted to a determination that the transaction in question,—the proposed sale from American to petitioners,—had the status of a transfer in respect to which the Commission could require a declaration. Petitioners say if the Commission could require a declaration, it could require the same to be modified, or it could allow the declaration to become effective, or it could deny its effectiveness; that the Commission is completely lacking in jurisdiction in respect to these matters because of the provision of § 2(c) of the Act, quoted above, and because of part (b) (3) under Rule U-44 of the Commission, which excludes from the requirement that no registered holding company should sell any securities except pursuant to a declaration, "any sale of securities or Utility assets to a federal or state government or to any subdivision, agency, authority, or instumentality thereof".[6]

The petitioners contend that they are aggrieved by the order in question in that it operates effectively to prevent the consummation of the proposed sale of the stock of Washington to petitioners who would be enabled to acquire the stock were it not for the attempted exercise by the Commission of a jurisdiction which it does not have either under the statute or under its own rules.

---

5. In its order of October 15, 1951, the Commission had suggested that any notice filed by American have "such form and content that it may be treated as a declaration, if it is appropriate to do so. * * * In indicating the desirability of having the notice take this form, we do not intend to be ruling at this time that a declaration will in fact be necessary. * * *"

6. Rule U-44(a): "Sales of utility securities or assets.—No registered holding company shall, directly or indirectly, sell to any person any security which it owns of any public-utility company, or any utility assets, except pursuant to a declaration notifying the Commission of the proposed transaction, which has become effective in accordance with the procedure specified in rule U-23, and pursuant to the order of the Commission with respect to such declaration under the applicable provisions of the Act.

"(b) Exceptions.—Provided that the transaction is not subject to rule U-43, the foregoing requirements shall not apply to the following: (1) Sale of securities of nonassociate companies.—Sales of securities of any company if prior to such sale, such registered holding company does not, directly or indirectly, own, control, or hold with power to vote, 10 percent or more of the outstanding voting securities of such company, or such company has been declared not to be a subsidiary of such registered holding company by order pursuant to section 2(a) of the Act. (2) Limited sales of securities or of utility assets.—Sales of securities or of utility assets, if the total consideration is less than $100,000, and the acquisition by the vendee is not subject to the approval of the Commission, and, in the case of securities, a written notice of intention to effect the proposed sale shall have been filed with the Commission at least 15 days prior to such sale. (3) Sales to governmental agencies.—Any sale of securities or utility assets to a Federal or State government or to any subdivision, agency, authority or instrumentality thereof. (4) Securities or assets of foreign companies.—Securities issued, or utility assets owned, by any public-utility company which does not operate or have any subsidiary which operates in the United States."

Part (c), quoted in note 4, supra, was adopted in December, 1946, subsequent to the time when parts (a) and (b) were adopted.

In arriving at their diverse views as to whether the Commission's order is sufficiently final to permit review here, the parties emphasize different portions of that part of the order which appears in note 2, supra. The Commission calls attention to the second and third paragraphs which recite: "It is hereby ordered that a hearing shall be held", and state the questions to be determined upon such hearing. The Commission says that this shows that the matters which petitioners seek to bring here are not "ripe for review"; that petitioners must first exhaust their administrative remedies, and that until a hearing is had, there will be no final, reviewable order under the rule of Myers v. Bethlehem Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, and Fed. Power Comm. v. Metropolitan Edison Co., 304 U.S. 375, 58 S.Ct. 963, 82 L.Ed. 1408.

On the other hand, to support their claim that the order is "ripe for review", and that it has the requisite finality, petitioners have concentrated their attention upon that portion of the order which recites that the Commission "has determined that American should file a declaration with respect to the proposed sale * * * and that * * * said notice is hereby treated as American's declaration". This, it is said, is an order presently determining the *status* of the transaction, and so viewed, the order has the requisite finality. Cases which have held orders determining status to be reviewable are Shields v. Utah Idaho R. Co., 1938, 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111; Rochester Tel. Corp. v. United States, 1939, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147; and Columbia Broadcasting System v. United States, 1942, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563.

It is possible that these words of the order that the Commission "has determined that American should file a declaration" should be construed as tentative only, prerequisite to the proposed hearing, at which hearing all relevant questions, including the question of the "status" of the transaction between American and petitioners, would be considered and determined. But for reasons which will presently appear, we think that possibility need not be considered here. We assume that this portion of the order is in truth a present determination of status, and hence must be treated as sufficiently final to warrant review.

The question, remains whether the petition presents any substantial grounds for review,—whether it states facts sufficient to constitute grounds for this court to exercise its original jurisdiction to review orders of the Commission. The sole basis for the prayer for review is the claim of the petitioners that they "and the transaction whereby the stock of Washington Water Power Company is sought to be sold to your petitioners are exempt from the jurisdiction of the Commission", and therefore the order is "in excess of the jurisdiction of the Commission." In so asserting they rely upon the language of Section 2(c) quoted above, to the effect that "no provision in this title shall apply to" any state or federal agency.[7]

We think that § 2(c) cannot be made to carry so much weight. True, the language is that "no provision in this title shall apply" to the Public Utility Districts. But the districts are only one party to the proposed transaction. The other party is American, and the provisions of the Act most assuredly do apply to it, and so do the terms of the dissolution order upheld in American Power & Light Co. v. S. E. C., supra. Of course the Commission cannot regulate what the districts may buy, but the Act contains adequate authority to the Commission to regulate what and how American may sell.

Rule U–44(c), (supra, note 4), under which the Commission has acted in requiring a declaration, has specific reference to registered holding companies which, like American, propose to "sell or otherwise dispose of any security, asset, or other interest

7. They say: "What the petitioners have, which is taken away from them by the Commission's order of January 18, 1952, is, not their opportunity to buy the stock of the Washington Company, but, by virtue of their exempt status under § 2(c) of the Holding Company Act, their right to buy it without commission approval."

in any business which it is required to dispose of by reason of any order of this Commission under § 11(b) of the Act."[8] The Act contains abundant authority for the rule. Among other sections,[9] 12(d), 15 U.S.C.A. § 79l(d), makes it unlawful "for any registered holding company * * to sell any security which it owns of any public utility company, or any utility assets, in contravention of such rules and regulations or orders regarding the consideration to be received for such sale, maintenance of competitive conditions, fees and commissions, accounts, disclosure of interest, and similar matters as the Commission deems necessary or appropriate in the public interest or for the protection of investors or consumers or to prevent the circumvention of the provisions of this title or the rules, regulations, or orders thereunder." § 11(d), 15 U.S.C.A. § 79k(d), provides for disposition of assets of a company like American, after appointment of a trustee by the district court, "subject to such rules. and regulations as the Commission may deem necessary or appropriate in the public interest or for the protection of investors". In like manner, § 11(e), 15 U.S. C.A. § 79k(e), plans for divestment are to be "In accordance with such rules and regulations or order as the Commission may deem necessary or·appropriate in the public interest or for the protection of investors or consumers". General power to make rules is granted by § 20(a), 15 U.S. C.A. § 79t(a).

We must assume that Congress contemplated that cases of this kind might arise. The circumstances of this case point to the practical reasons for believing that Congress did not intend to limit the Commission's control of such a divestiture by American, merely because a state agency proposes to purchase. The tentative character of the financial arrangements, and the expedients to which the petitioners will be obliged to resort in an effort to avoid another state court injunction, are disclosed by the petition. These circumstances make it apparent that the parties to the proposed arrangement have a long road to

travel, and that there is fair reason for the Commission's proposed inquiry as to whether the transaction is "susceptible of reasonably prompt consummation."

The proposed contract of sale and purchase has not been signed by either party, although American, by its notice under Rule U–44(c), and petitioners by this proceeding, have made their several approvals thereof matters of record. The notice discloses that the source of the necessary funds has not yet been decided on,—whether the required $153,000,000· would be financed through a bank loan to the districts, or by a sale of the bonds of the districts and of the non-profit corporation hereafter mentioned.

In order to avoid another state court injunction based on ownership of utility assets outside the State of Washington, (a substantial part of Washington's assets are in Idaho), it is proposed as Washington stock is acquired, to cause that company to be partially liquidated by transferring all the properties in the State of Washington to the districts, leaving Washington owning only the Idaho properties. Washington's common stock, it is said, would then be sold to a non-profit membership corporation, which would issue some $51,000,000 in bonds for·acquisition of the Washington stock and to increase the latter's capital sufficient to complete construction of a hydro-electric project now under way in Idaho. It thus appears that in essence the sale proposed, while nominally to the districts, is actually to be to the districts and to the yet unborn non-profit corporation.

The Commission has called our attention to some of the difficulties and uncertainties which this suggested arrangement poses. Some of these are: the voluntary credit restraint program of the Board of Governors of the Federal Reserve System which does not favor extension of credit of the type which petitioners must seek, and which might dry up the sources of the needed financing; the argument made by some opponents of the proposal that the districts cannot avoid another state court

---

8. This is the section under which American's dissolution was ordered.

9. E. g., §§ 6(a), 7(a), 15 U.S.C.A. § 79f, g.

injunction, since the Washington Supreme Court might uphold a contention that the districts cannot acquire the entire common stock of Washington even although as to the portion representing the Idaho assets they would act merely as a conduit of title; whether the districts can acquire properties beyond those necessary to service their own territories, and hence whether they could service the many customers of Washington outside the district boundaries;[10] there is no provision in Idaho law for creation of a non-profit corporation, and if a corporation of this sort be arranged for, it would become a holding company under the Act, and be required to register and obtain Commission approval; the proposed capital structure of the non-profit corporation is such as to raise doubts of the saleability of the bonds of that company, which may possibly be a public utility under Idaho law, in which case issuance of its bonds would require approval of the Idaho Public Utilities Commission.

In the light of this factual situation, we cannot believe that § 2(c) was intended to tie the hands of the Commission whenever, as here, the company subject to an 11(b) divestiture order, chooses to deal with a public agency. § 2(c), in providing that "no provision in this title shall apply to" any state or Federal public agency, did not say that no provision of the title "shall apply to any registered holding company in respect of a transaction otherwise subject to the Act whenever the other party to the transaction is some public agency, state or federal." The Act is replete with mandates to the Commission that in respect to such divestiture as is now ordered to be accomplished by American, it shall issue such orders as it deems necessary or appropriate "in the public interest or for the

protection of investors or consumers." Whether the proposed sale is "susceptible of reasonably prompt consummation" is a consideration of vital importance to the investors who have their money in the enterprise, and whose possible interest in the alternative plan to distribute the stock should be a concern of the Commission. The numerous problems posed by the notice relate to the interests of consumers in the areas served by Washington. We cannot think that anything said in § 2(c) can have the effect of ousting the Commission of its necessary consideration of these matters merely because American chooses to attempt a sale to a state agency. The suggestion that § 2(c) cannot be given less than the force contended for by petitioners without violating the Tenth Amendment, is too wanting in substance to require discussion here.

If, as we have previously suggested, the Commission, in ordering the declaration was doing so only tentatively, with the purpose of laying a foundation for the hearing ordered, at which the entire question of the Commission's jurisdiction would be open for argument and decision,[11] it might well be that the order here presented contains no determination of status. But viewing it as an order of that nature, we have concluded for the reasons stated, that the petition fails to state substantial grounds for invoking our original jurisdiction to review. Nothing in the petition suffices to disclose any ground for denying the Commission power to order the notice to be considered a declaration.

This conclusion makes it unnecessary to consider other questions as to our duty to entertain the petition for review, such as whether petitioners, who as yet have no signed contract of purchase, have "stand-

---

10. It appears that Washington owns the steam heat system in Spokane. The notice recites that the districts have agreed to sell the distribution properties in Spokane to the city. The city has moved for leave to intervene here in opposition to the petition, which indicates the city's agreement to purchase is lacking. This question bears upon the problem of possible litigation, as well as upon the prospects of successful financing.

11. The petition discloses that in February,

1951, the Commission, as previously stated, divided evenly upon this question, and that in 1945 and 1946, the then Chairman of the Commission testified with respect to the Nebraska Power Company case, that under § 2(c) "the Commission had no jurisdiction over a Holding Company transaction with a public body from any angle." Conceivably the Commission might, at this time, as a matter of policy, choose not to exercise any such jurisdiction.

ing" here,[12] or what effect upon that "standing" is wrought by the fact that the Commission might, at any moment, throw the whole matter into a district court, under § 11(d).

It is sufficient to say that we find nothing in the petition which calls for the exercise of any present review on our part. Accordingly, the petition is dismissed and the stay is vacated.

---

12. It is doubted if any case has sustained "standing" upon a slighter foundation than Oklahoma v. Civil Service Comm'n., 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794. There a regularly established system of highway grants, of long standing, would support a reasonable expectation of continuance of such receipts. No comparable facts assure petitioners that American's board will not change its mind.