A. A. KILLION, Plaintiff,

v.

Eugene B. SCOTT, Gibbs Rucker and Sidney E. Miller, Review Committee of Roosevelt County, New Mexico, Agricultural Stabilization and Conservation, Defendants.

Civ. No. 3786.

United States District Court
D. New Mexico.

July 9, 1959.

Jay Morgan, Portales, N. M., for plaintiff.

James A. Borland, U. S. Atty., and Ruth C. Streeter, Asst. U. S. Atty., Albuquerque, N. M., for defendants.

KERR, District Judge (Temporarily Assigned).

This is a proceeding under Sections 1365 and 1366, Title 7 U.S.C.A. (Agricultural Adjustment Act 1938), for a review of a determination made by the defendants herein, who constitute the Review Committee having jurisdiction of such matters in Roosevelt County, New Mexico. The Review Committee is appointed by the Secretary of Agriculture and is created under the Agricultural Adjustment Act for the purpose of reviewing matters relating to farm acreage allotments and farm marketing quotas established by the local county committees. Section 1365 of the Act confers jurisdiction on this court to review a determination of the Reviewing Committee with which a farmer is dissatisfied and the review by this court is limited to questions of law and findings of fact by the Review Committee, if supported by evidence, shall be conclusive.

On July 15, 1958, this matter was remanded to the Review Committee by this court for the purpose of permitting additional evidence to be taken. Following the taking of additional evidence and in accordance with the Act there has been certified and filed with the Court a transcript of the record upon which the determination is made, together with the findings of fact of the Review Committee. This record discloses that the determination of the Review Committee relates to the 1957 cotton crop and con-

tains inter alia the following findings of fact:

"We find that only one official notice as to the farm normal yield was established for Mr. Killion's farm No. 85–021–57–217. Such official notice reflected a determination of a 99 pound farm normal yield and was forwarded to Mr. Killion under date of November 5, 1957.

"We find that the 99 pound normal yield established by the County Committee in their official capacity was determined in accordance with the marketing quota regulations governing the 1957 crop cotton.

"The County Committee adjusted the production of two crop years (1952, 1954) because of abnormal conditions. The Review Committee finds that this adjustment was proper and the adjustment was made in accordance with the 1957 cotton marketing quota regulations.

"That the Acreage Reserve Program and the Cotton Marketing Quota Program are two different programs entirely. That different and separate regulations are issued and used in the operation of each of such programs."

A summary of the evidence is essential in determining whether the aforesaid findings of fact are supported by substantial evidence.

### Evidence.

On December 6, 1956, plaintiff was notified of his 1957 cotton allotment of 185.5 acres. Disregarding this allotment he planted 810 acres, or an excess of 624.5 acres. The evidence shows that at a hearing before the Review Committee plaintiff's actual production for his 1957 cotton crop was 169.9 pounds per acre. These facts are not in dispute.

Plaintiff urges that in October 1957 he met with the County Committee and it was agreed at that time the normal yield would be set at 70 pounds per acre. He further shows that the County Committee transmitted the figure of 70

pounds per acre to the State A.S.E. It further appears from the evidence that the State Committee refused to approve the recommended figure of 70 pounds per acre and suggested the figure be raised to 99 pounds per acre. The County Committee accordingly raised the normal yield to 99 pounds per acre. It is the plaintiff's theory that the "gentlemen's agreement" between him and the County Committee was a binding agreement and that the State Committee was powerless to suggest the increased normal yield. The record further discloses that at the time the plaintiff was making visits to the office of the County Committee the Committee had not received the regulations for 1957 and the plaintiff was advised by the administrative officer that the regulations might be changed. It would therefore appear that the plaintiff assumed a calculated risk, both in assuming that his normal yield would be set at 70 pounds per acre and in exceeding the allotted acreage.

The acreage allotment regulations for the 1957 cotton crop provide:

"§ 722.829. Approval of determinations and redelegation of authority by the State committee—(a) Approval of State acreage reserves, county acreage allotments, and county acreage reserves. Determinations of State acreage reserves and county acreage allotments, as provided for in § 722.816(a) and § 722.816(e), and of county acreage reserves, as provided for in § 722.-817(b), shall be subject to review and approval by the Secretary.

"(b) Approval of county committee determinations. *The State committee shall review,* all acreage allotments and may revise or require revision of any determinations made under §§ 722.817 to 722.826. All acreage allotments for both old and new cotton farms, shall be approved by the State committee, *and no official notice of farm acreage allotment and marketing quota shall be mailed to a farm operator until such*

*allotment has been approved by the State committee.*

"(c) Redelegation of authority. Any authority delegated to the State committee by the regulations in §§ 722.817 to 722.829(b), inclusive, may be redelegated by the State committee, subject to the approval of the Deputy Administrator." Reprint from 21 Federal Register 7817. (Emphasis supplied.)

It would appear from the above section that the argument of the plaintiff that the state committee exceeded its authority is without merit. See Smith Land Co. v. Christensen, 10 Cir., 148 F.2d 184. The above regulation requires both a review and approval of the State Committee of the action taken by the County Committee.

Turning now to the purpose of the Act, Section 1341, Title 7 U.S.C.A., provides in part:

"The conditions affecting the production and marketing of cotton are such that, without Federal assistance, farmers, individually or in cooperation, cannot effectively prevent the recurrence of excessive supplies of cotton and fluctuations in supplies, cannot prevent indiscriminate dumping of excessive supplies on the Nation-wide and foreign markets, cannot maintain normal carry-overs of cotton, and cannot provide for the orderly marketing of cotton in interstate and foreign commerce.

"It is in the interest of the general welfare that interstate and foreign commerce in cotton be protected from the burdens caused by the marketing of excessive supplies of cotton in such commerce, that a supply of cotton be maintained which is adequate to meet domestic consumption and export requirements in years of drought, flood, and other adverse conditions as well as in years of plenty, and that the soil resources of the Nation be not wasted in the production of excessive supplies of cotton."

The framework of the Act itself, both as originally passed and as amended, and the reports of the Congressional committees that drafted it, shows a prime purpose to limit national and individual farm production and marketing to the quotas allotted. Control of the national supply depends upon control of the individual supply. Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122. The conduct of the plaintiff in knowingly exceeding his quota by 624.5 acres hardly places him in a position to charge the State Committee with "unfairness".

A careful review of the evidence, exhibits, statutes and regulations leads me to the belief that the findings of fact made by the Review Committee are supported by substantial evidence and were made in accordance with law.

Counsel for defendants will prepare judgment affirming the determination of the Review Committee and submit the same within 15 days from the date of this memorandum.