# EDITH P. HAMMER

## v.

## WORKMEN'S COMPENSATION COMMISSION, et al.

## No. 9110

## Circuit Court of Appeals

### Third Circuit

## Argued May 20, 1946

## Decided July 9, 1946

*See, also, 156 F.2d 402*

JAMES A. BOUGH, District Attorney and CROXTON WILLIAMS, Asst. District Attorney both of Charlotte Amalie, Virgin Islands, *for appellant*

FRANCIS LOGAN, of Philadelphia, Pa. (DAVID E. MAAS, of St. Thomas, Virgin Islands, on the brief), *for appellees*

Before MARIS, GOODRICH and McLAUGHLIN, *Circuit Judges*

MARIS, *Circuit Judge*

The Workmen's Compensation Act[1] of the Municipality of St. Thomas and St. John, Virgin Islands of the United States, provides for compensation for the death of an employee which results "from a personal injury arising out of and in the course of his employment." The plaintiff, widow of Franz Albert Hammer, an employee of the West Indian Company, Ltd., filed a claim with the Compensation Commission for compensation benefits pursuant to the Act. The Commission denied the claim upon the ground that the injury causing Hammer's death did not arise out of and in the course of his employment. The plaintiff appealed to the District Court which found that Hammer's death was due to injuries arising out of. and in the course of his employment and entered judgment directing the Commission to authorize payment of

[1]Ordinance of the Municipal Council of St. Thomas and St. John approved May 5, 1941 [subject now covered by 24 V.I.C. § 521 et seq.].

compensation to the plaintiff. The Commission has appealed.[2]

The evidence at the hearing before the Commission was substantially as follows: Hammer was employed by The West Indian Company, Ltd., at St. Thomas as a crane foreman. His contract of employment was in writing and provided, inter alia:

"*Working Hours and Remuneration:* The normal working week consists of 48 hours. The working hours may fall at any time, Sundays and Holidays not excepted. 50% overtime will be paid after 48 hours a week, Sundays and holidays not excepted. The wages are paid according to the following schedule, and the stipulated monthly minimum wage is guaranteed you, provided you agree to work whenever required by the Company.

*Wage Schedule:*

| Normal Payment per hour | Overtime Payment per hour | Additional Guaranteed Minimum Monthly Wages |
|---|---|---|
| Class 1 $1.30 | 50% | $225.00 |

Time will be figured in units of half hours.
*House:* The Company will furnish you with a house during the term of this contract."

The contract was in force as of January 1, 1942. On February 7, 1942, Hammer's salary was changed by mutual consent to a flat basis of $275 per month. Prior to this change the company kept a time record for Hammer in which it computed his hours of work from the time he left his house. After the change no time record was kept.

Part of the business of the company was to give 24 hour refueling service to boats which stopped at its dock.

[2]At the hearing before the Commission the employer and the Commissioner of Finance, as custodian of the Municipal Insurance Fund, opposed the claim. Before the District Court the Commission and the employer resisted the appeal. In this court the Commission alone appears as appellant. The employer has not joined in the appeal.

Hammer was in charge of the crew which rendered this service. It was customary for Hammer to round up the members of his crew and report for work at any time that a boat needed this service. On Saturday, February 3, 1945, Hammer was informed by the company superintendent that a barge was expected at the dock Sunday evening. Again at about noon on Sunday, February 4th, he was told by the company's chief clerk that the barge was expected that evening. As a matter of fact the captain of the barge changed his mind and did not dock until Monday. However, the only persons who knew of this change in plan did not communicate with Hammer. At about six o'clock on Sunday evening Hammer returned home with the express purpose of being near the dock should the barge arrive. At seven o'clock he phoned the watchman at the dock and asked to be told when the barge arrived. He then rested for a time. At 9:45 o'clock he dressed, told the plaintiff he was going to pick up his crew and that he would be back from work about four o'clock Monday morning.

At seven o'clock on Monday morning the plaintiff telephoned the dock because her husband had not returned and she was told he had not reported for work. She then went to the garage and discovered her husband's dead body. He was lying face up, one shoulder against the back of the car, the other shoulder against the wall of the garage. His left leg was bent and under the car. Soot covered his face and chest, which were directly in line with the exhaust pipe of the automobile. The motor was still warm but not running. All the gasoline in the tank had been consumed. The testimony was all to the effect that Hammer was in good health, good spirits and had no known domestic or financial worries. The medical testimony was that his death was due to carbon monoxide

481

poisoning. Hammer was survived by his wife, the plaintiff herein. He had no children or other dependents.

From this evidence at the hearing the Commission found:

"1. No satisfactory evidence that the decedent was called by telephone from the West Indian Dock.[3]

"2. Insufficient evidence to show that the decedent had left his home to go to the Dock.

"3. Insufficient evidence to show that the decedent had started on his way to work at the Dock.

"4. That the barge which the decedent was to tend did not in fact go to the dock at any time that day or that evening of the accident; that it went to the Dock the next day.

"5. That the decedent did not meet his death in the course of his employment.

The Commission thereupon ordered "that the claim for compensation for death of Franz Alfred Hammer shall be and hereby is denied on the ground that his death did not arise out of and in the course of his employment."

The issue which the parties have raised on this appeal is whether the Commission's findings are sustained by the evidence and whether its conclusions were erroneous as a matter of law so as to warrant reversal of its order by the District Court. Our examination of the record, however, discloses a basic question as to the jurisdiction of the District Court to entertain Mrs. Hammer's appeal with which we must deal at the outset.

 The Organic Act of the Virgin Islands of the United States[4] provides that the judicial power of the Virgin Islands shall be vested in a court to be designated

---

[3]The plaintiff testified that Hammer received a telephone call at about eight o'clock Sunday evening that the barge would be in at ten o'clock that night. There was considerable testimony directed towards establishing that no such call was made by any employee of the company. The Commissions finding No. 1 is a determination of this factual controversy.

[4][1936 Organic Act of the Virgin Islands, § 1 et seq., prec. 1 V.I.C.], 48 U.S.C. § 1405 et seq.

as "the District Court of the Virgin Islands"[5] and that the District Court shall have jurisdiction, inter alia, of all cases in equity and of all matters and proceedings which may be placed within its jurisdiction by local law.[6] The applicable local law, the Workmen's Compensation Act of the Municipality of St. Thomas and St. John, did confer jurisdiction upon the District Court to review upon appeal certain orders of the Commission. The second sentence of the second paragraph of Section 8 of the Act, upon which the plaintiff relies for the right to review by the District Court, reads: "If not in accordance with law, the order awarding compensation may be reversed or modified by the District Court upon appeal by any party in interest within thirty (30) days from the date of the order."

The appeal which is thus provided is from an "order awarding compensation." Except by wholly ignoring the clear meaning of the words used the phrase may not be construed to include within its scope an order rejecting a claim for compensation. Compare Crescent Wharf & Warehouse Co. v. Pillsbury, 9 Cir., 1938, 93 F.2d 761. We are, therefore, compelled to conclude that the district court had no power under the Workmen's Compensation Act to review on appeal the order denying Mrs. Hammer compensation.

This is not to say that Mrs. Hammer is wholly without the right of judicial review. The Supreme Court has held that in the absence of statutory provision for the review of a determination of an administrative agency the equity jurisdiction of the appropriate court may be invoked when it is essential to the protection of the rights asserted by

[5] [1936 Organic Act of the Virgin Islands, § 25, prec. 1 V.I.C.], 48 U.S.C. § 1405x.
[6] [1936 Organic Act of the Virgin Islands, § 28(2), (8), prec. 1 V.I.C.], 48 U.S.C. § 1406(2), (8).

one affected by the order.[7] Accordingly it may well be that Mrs. Hammer might bring a civil action against the Commission in the District Court seeking equitable relief against the order of which she complains. Such an action, however, would not be a trial de novo but would be restricted to the question whether the Commission had acted lawfully under the Organic Act and within the authority conferred upon it by the Workmen's Compensation Act. Since the determination of claims for compensation was conferred on the Commission by the Act and it held a hearing on Mrs. Hammer's claim at which she was present with her witnesses and testified, the sole remaining question would be, as was the case in Shields v. Utah Idaho R. Co. (1938) 305 U.S. 177, 185, 59 S. Ct. 160, 165, 83 L. Ed. 111, "whether the Commission in arriving at its determination departed from the applicable rules of law and whether its finding had a basis in substantial evidence or was arbitrary and capricious. . . . That question must be determined upon the evidence produced before the Commission."

██ We think it only fair to say that our examination of the evidence before the Commission in this case satisfies us that it was sufficient to support the finding that Hammer did not meet his death in the course of his employment. This finding resulted from inferences which the Commission drew from the evidence. But it was the Commission's prerogative, as finder of the facts, to draw the necessary inferences from the evidence and the District Court upon review, whether by appeal or equitable action, would not be empowered to disturb them.

The judgment of the District Court is reversed and the cause is remanded with directions to dismiss the appeal.

[7]Shields v. Utah Idaho R. Co. (1938) 305 U.S. 177, 183, 59 S. Ct. 160, 83 L. Ed. 111; Utah Fuel Co. v. Coal Com'n (1939) 306 U.S. 56, 59, 59 S. Ct. 409, 83 L. Ed. 483.