**FRANCISCO BERMUDEZ, Plaintiff**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS; MELVILLE M.
STEVENS, Commissioner of Labor, REUBEN B.
WHEATLEY, Commissioner of Finance; and
CHICAGO BRIDGE & IRON Co., LTD.,
Defendants**

## Civil No. 225-1970

## District Court of the Virgin Islands

### Div. of St. Thomas and St. John

## February 28, 1973

GRUNERY, STOUT, HYMES and MAYER, ESQS. (JOHN E. STOUT, ESQ., of counsel), Charlotte Amalie, St. Thomas, V.I., *for plaintiff*

RONALD H. TONKIN, ESQ., Attorney General of the Virgin Islands, Charlotte Amalie, St. Thomas, V.I., *for defendants Government, Stevens and Wheatley*

BAILEY, WOOD and ROSENBURG, ESQS. (WILLIAM W. BAILEY ESQ., of counsel), Charlotte Amalie, St. Thomas, V.I., *for defendant Chicago Bridge and Iron Co., Ltd.*

CHRISTIAN, *Chief Judge*

## OPINION

The plaintiff in this cause seeks review of a final Order of the Commissioner of Labor, entered by the District Director, in which Order, dated May 21, 1970, the director determined that plaintiff suffered a permanent partial disability and awarded him compensation therefor in accordance with applicable law. In the alternative, the plaintiff asks this court to hear the matter "de novo and acting

upon the evidence adduced, enter an Order or Judgment fixing the proper award to plaintiff on his claim for compensation benefits."

Francisco Bermudez, the plaintiff herein, and a native of Aruba, Netherland West Indies, was employed in St. Croix, Virgin Islands by Chicago Bridge and Iron Company, Ltd., as a structural fitter. On December 5, 1967, while in the course of his employment, a heavy piece of iron pipe, described as a "structural buggy-boom" somehow became disengaged, fell and struck him on the right leg causing the severe injuries for which he applied for workmen's compensation. He was hospitalized briefly in the Virgin Islands and thereafter in Puerto Rico. Treatment continued over a period of years, at first for his obvious injuries which were a fracture of the mid-shaft of the right femur and a closed comminuted fracture of the upper third of the right tibia and fibula. As his treatment progressed, it was found that he complained of pain in his back. X rays taken revealed that there was some injury to the lumbosacral spine which it was determined was resultant upon the injury and the accident mentioned above. This latter ailment was rectified by operative procedure. The lamina of L5 was removed and an H graft was performed. Plaintiff's treatment continued for quite some time. In the course of that period he was regarded by the compensation authorities as temporarily totally disabled. He was compensated accordingly.

As late as August 8, 1969, it was plaintiff's doctor's opinion that he was still temporarily totally disabled for manual work. It was then estimated that he should be rechecked monthly for a period of six additional months, by which time the doctor would determine when he could return to gainful employment.

As of August 13, 1969, the medical opinion was that his partial permanent impairment of the right lower ex-

387

tremity was approximately 25 to 30 percent and that he could then engage in "a light job", but could not "perform work . . . necessitating bending or lifting." Subsequent to the letter last mentioned, the patient reported to the District Director that he could not secure light work. It should be borne in mind that at this time plaintiff had returned to his native Aruba, making it somewhat difficult, though by no means impossible, for the District Director to verify his inability to obtain "light work."

Matters continued in this posture with the government making payments to plaintiff in the maximum amount allowable for temporary total disability. On April 20, 1970, however, the Deputy Commissioner of Labor wrote to Dr. Horn, the physician to whom I have alluded above, inquiring whether or not an evaluation of the plaintiff's condition could then be made so that the government might make a final award and close his case. Responding to that inquiry, Dr. Horn, by letter of April 29, 1970, stated:

I estimate the permanent disability consequential to the fractures of the right lower extremity and consequential to the injuries to the lumbosacral spine at about 35% of the general physiological functions of his body.

It is recommended that this case be closed with a final award which I consider also of therapeutic value.

Evidently acting solely upon the authority of Dr. Horn's letter of April 29, the District Director entered the final Order, here challenged, in which he found the facts to be as follows:

1. That, claimant received compensation for temporary total disability up to and including May 15, 1970.

2. That, according to competent medical authority, it is estimated there exists permanent partial disability consequential to the fractures of the right lower extremity and to the lumbosacral spine of about thirty-five percent (35%) of the general physiological functions of the body.

388

3. That, the disability is associated with and resembles mostly that of the legs, that compensation for the loss of a leg is one hundred eighty (180) weeks at the compensation rate in this case of Forty-Five Dollars ($45.00) per week or Eight Thousand One Hundred Dollars ($8,100.00); that Seventeen and One-Half Percent (17½%) of each leg is equal to One Thousand Four Hundred Seventeen Dollars Fifty Cents ($1,417.50) or a total of Two Thousand Eight Hundred Thirty-Five Dollars ($2,835.00) for both legs.

Based on those factual findings, the director concluded that the plaintiff was entitled to a lump sum award for permanent partial disability in the amount of $2,835.00. It was so Ordered and plaintiff's case was closed. These proceedings followed.

█ █ At the outset, I should dispose of plaintiff's alternative prayer for relief. The de novo hearing for which the plaintiff prayed is not available to him. This court is limited to a review of the findings of the Commissioner of Labor to ascertain if such findings are based on substantial evidence, Hammer v. Workmens Compensation Commission 156 F.2d, 402, 2 V.I. 478 (3 Cir. 1946). If on review it is found that the findings of the Commissioner are supported by substantial evidence, this Court is without authority to disturb them, 24 V.I.C. § 256(c). It follows that the application for de novo hearing must be denied.

We turn then to a review of the Commissioner's findings, conclusions and Order.

█ Plaintiff, in challenging the Commissioner's Order, contends that his true classification is that of "permanent total disability". Title 24, V.I.C. § 264(d), in force as of the times pertinent hereto, defined permanent total disability in part as,

such other injuries as result in the total and permanent disability of the person to perform any kind of labor in renumerative occupations.

389

It is clear, therefore, that the enactment encompasses a concept of permanent total disability which includes not only medical aspects of a given case but economic factors as well. Our research has uncovered no case in this jurisdiction which has heretofore dealt with this precise problem of statutory construction, nor with the issue raised when the Commissioner makes a determination of disability based solely on medical evaluation. The issue then before the Court is of first instance, and might best be analyzed and determined in the light of similar statutes designed and enacted to effect like purposes.

Analogizing with the Longshoremen and Harbor Workers Compensation Act, 33 U.S.C., § 901, 44 Stat., § 1424 (Longshoremen Act), we find that it has been held that a claimant who no longer was employable except for light work which he found very hard or impossible to find, was, in economic terms, "totally disabled", U.S. Fidelity & Guaranty Company v. O'Keefe, 24 F.Supp., 816 (S.D. Fla. 1962); and in Quick v. Martin, 397 F.2d 644 (D.C. Cir. 1968), the Court held that the concept of total disability is economic as well as medical. In keeping with this principle, the Court went on to hold that the lack of medical testimony expressly stating that the claimant's disability was total, was not fatal to a finding of total disability in proceedings brought under the Longshoremen's Act. The District of Columbia Circuit has further held that the degree of disability under the Longshoremen's Act cannot be measured solely by the injured worker's condition but rather must take into consideration such additional factors as the claimant's age, his industrial history and the availability of that type of work which he can do. American Mutual Ins. Co. of Boston v. Jones, 425 F.2d, 1263 (D.C. Cir. 1970). Thus, it was that the Court in American Mutual Ins. Co. of Boston v. Jones went on to say (at p. 1265) that even a relatively minor injury must lead to a finding

of total disability under the Longshoremen's Act if such an injury prevents the employee from engaging in the only type of gainful employment for which he is qualified, the Court being of the opinion that the Longshoremen's Act makes clear that disability is substantially an economic and not a medical concept.

It is manifest from the record that the District Director, in making its findings, did not take into consideration the critical factors of the plaintiff's work history nor the type of work he is capable of performing, nor yet, whether any such work as he might be capable of performing were available to him. Moreover, the doctor in his final evaluation did not specifically say whether the plaintiff, at the time of his final letter, could or could not return to work, or whether he was yet, at that time, able to do only "light jobs" as he had previously indicated, which did not necessitate bending or heavy lifting. It follows, therefore, that the District Director's finding that the plaintiff suffered a permanent partial disability rather than a permanent total disability was based solely on the workman's physical condition as of the date of Dr. Horn's April 29, 1970 letter. The meager statement of the doctor forms, in my judgment, an inadequate basis upon which to bottom the ultimate finding which was entered in this case by the Commissioner. This short-coming, the failure of the District Director to weigh and consider the relevant economic aspects of plaintiff's situation, makes reversal of his decision necessary. By reason of his having failed to consider the factors above-mentioned other than physical condition, the finding of the Commissioner of permanent partial disability cannot be said to be supported by substantial evidence. It may well have been a consequence of an erroneous interpretation of the statute since it is clear, from the record, that the District

Director did not feel duty bound, as I hold he was, to take economic factors into account.

The Court recognizes that since the plaintiff is a resident of Aruba, certain difficulties will be encountered by the Commissioner in determining the availability of the type of work which the plaintiff can do, after it has been determined by competent testimony or other evidence what, if any, type of work he is fit to perform. I reiterate that the task, though fraught with obstacles, can be effectively accomplished. The evidence upon which the Commissioner relied was gleened from correspondence with Dr. Horn who wrote from Puerto Rico. By the same means of communication, it would be possible for the director to determine the availability in Aruba of work of the type which plaintiff can perform, if indeed he can perform any.

For all the foregoing, therefore, the Order of the District Director will be reversed and the case remanded to him for further hearing and determination in accordance with this Opinion.

### JUDGMENT

This matter came on before the court for review of an Order of the Commissioner of Labor, entered by the District Director, and the Court, after reviewing the record and the said Order, and upon consideration of the Memoranda filed by the parties,

IT IS ORDERED, ADJUDGED AND DECREED that the Order of the District Director dated May 21, 1970 be reversed and the case remanded to him for further hearing and determination.