## LINUS PHILLIP, Petitioner

v.

## GOVERNMENT OF THE VIRGIN ISLANDS, DEPARTMENT OF LABOR, Respondent

Civil No. 80/167

District Court of the Virgin Islands

Div..of St. Croix

January 20, 1981

JOHN K. DEMA, ESQ., Christiansted, St. Croix, *for petitioner*

ALBERT NELTHROPP, ESQ., Department of Labor (Government of the Virgin Islands), Christiansted, St. Croix, V.I., *for respondent*

FINCH, *Judge*

## MEMORANDUM AND JUDGMENT

This case is before the Court on a petition for review of a final order of the Commissioner of Labor entered by the District Director of the Division of Workmen's Compensation on June 23, 1980. That order granted scheduled income benefits of $3,600.00 to Linus Phillip based on a finding of permanent partial disability of 15% of the general physiological functions of his body. Mr. Phillip, the petitioner, claims total permanent disability and argues that the District Director's decision was not supported by "substantial evidence." For the reasons stated below, the order of the District Director is reversed and the case remanded to him for further hearing and determination.

270

Linus Phillip, a native of St. Lucia, was injured on April 11, 1974, during the course of his employment as a steelbender for Litwin Corporation. The full weight of an oxygen bottle Mr. Phillip was lifting with another employee was transferred to Mr. Phillip, causing an injury to his lower back. Since that time the petitioner has consulted several doctors concerning his back problems. He has undergone surgery twice. It is uncontested that Mr. Phillip has not had a complete recovery from his injury.

The parties rely basically on medical reports from two doctors which, although not necessarily contradictory, contain differing emphases. The April 7, 1978, report of Dr. Rafael Longo, the physician who performed the second operation on Mr. Phillip, notes in part:

> In summary, from the medical point of view, I would like to say that Mr. Phillips (*sic*) definitely has a permanent disability associated with his back and lower extremities. It is difficult to establish an exact percentage, but I will say that for an individual who is engaged in occupations requiring repetitive bending and heavy lifting he has a total and permanent disability from his back. . . .

> I am not well aware of Mr. Phillips' degree of formal education, but this area should be explored in order to provide him with rehabilitation in a field that he could make a living without requiring repetitive bending, heavy lifting, long periods of driving.

> In summary, Mr. Phillips has severe disability, considered to be 100% for his low back, this is considered to be permanent.

It is primarily on the basis of this report that Mr. Phillip claims total permanent disability.

Dr. Karl Horn's report of June 5, 1980, derives from a physical examination of the petitioner on or about that date. He found a permanent disability of the general physiological function of the patient amounting to 15%. It was on the basis of this report that the District Director found permanent partial disability for Mr. Phillip amounting to 15%.

Respondent Department of Labor, Government of the Virgin Islands (The "Government") conceptualizes this petition for review as simply a contest between two experts, in which case the Court should accede to the District Director's decision, as there was substantial evidence in the form of Dr. Horn's report to justify the decision.

271

If this were the sole issue for review, the Government would be correct. However, petitioner points to the case of Bermudez v. Government of the Virgin Islands, et al., 9 V.I. 385 (D.C.V.I. 1973) where under quite similar facts the St. Thomas District Court reversed and remanded a finding of permanent partial disability by the District Director because no consideration was given to economic factors in evaluating permanent disability. Although the Government does not refer to this case in its reply brief, the issues brought up in Bermudez are central in the instant case also.

In Bermudez, the District Court analogized the Virgin Islands Workmen's Compensation Act to the Longshoremen and Harbor Workers Compensation Act (LHWCA), 33 U.S.C. § 901 et seq. Cases construing the LHWCA have found that the concept of total disability is economic as well as medical. See U.S Fidelity & Guaranty Company v. O'Keefe, 24 F.Supp. 816 (S.D. Fla. 1962), Quick v. Martin, 377 F.2d 644 (C.A.D.C. 1968), Diamond M. Drilling Co. v. Marshall, 577 F.2d 1003 (5th Cir. 1978). This means that an individual may be totally disabled for purposes of the Act when physically capable of performing certain work but otherwise unable to secure that particular kind of work. Diamond M. Drilling Co. v. Marshall, supra, at 1006. Degree of disability under the Longshoreman's Act is not measured by physical condition alone; other factors to be considered are claimant's age, education, industrial history and availability of work which he can do. American Mutual Insurance Co. of Boston v. Jones, 426 F.2d 1263 (C.A.D.C. 1970), Watson v. Gulf Stevedore Corp., 400 F.2d 649 (5th Cir. 1968), cert. denied, 394 U.S. 976, 89 S.Ct. 1471, 22 L.Ed.2d 755 (1969).

■ The language of the Virgin Islands Workmen's Compensation Act, chapter 11 of Title 24 of the Virgin Islands Code, reinforces this position that the decision as to whether an employee has suffered permanent total disability should involve economic considerations. The definition of "disability" in that chapter reads in relevant part:

"Disability" means, except for purposes of Scheduled Income Benefits, a decrease of wage earning capacity due to injury . . .

"Scheduled income benefits" means compensation for permanent partial disability. 24 V.I.C. § 251(a).

This definition of disability, corresponding to that of the LHWCA insofar as "wage earning capacity" is used as the rule, makes clear the economic factor of disability. Under 24 V.I.C. § 254d permanent total disability includes "such other injuries as result in the total and

permanent disability of the person to perform any kind of labor in remunerative occupations as determined by the Commissioner." This standard of inability to perform remunerative labor must be interpreted in a concrete rather than abstract context. That is, an injured claimant may be able to perform some light office work, but none may be available in the area which he resides for a person of his age, skills, or education. This too is total disability.

■ Thus, when a claim of total permanent disability is presented, the District Director must make a twofold determination. First, he must determine what kind of work the claimant is still able to perform. Second, and this is the crucial element missing from the District Director's determination in both Bermudez and the instant case, the availability of such work to claimant in the area which he lives must be determined. The concept of "total disability" is thus put on a practical rather than theoretical basis.

■ As to the placing of the burden of proof as to availability of work Phillip can now perform, it is again helpful to look to LHWCA for guidance. The rule under that Act was first articulated in Perini Corp. v. Heyde, 306 F.Supp. 1321 (D.R.I. 1969):

> The burden is on the employer to establish that an employee injured in the course of his employment who proves he is disabled from his regular employment has actual opportunities to obtain other work.[1]

This rule has been approved by every court deciding this issue. Newport News Shipbuilding and Dry Dock Company v. Director, Office of Workers' Compensation Programs, United States Department of Labor, et al., 592 F.2d 762, 764 n.3 (4th Cir. 1979). The rule is also applied in the area of social security benefits. Long v. Califano, 451 F.Supp. 273 (S.D. W. Va. 1978). "Actual opportunities to obtain other work" means that the employer must demonstrate that there are jobs available in the local economy which the claimant, considering his age, past experience and disability, is capable of performing. Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968), Newport News Shipbuilding, supra.

It is agreed by all parties that Mr. Phillip cannot return to his former position as steelbender. In a future hearing, then, the employer or government must show that there are available jobs that Mr. Phillip can perform in his local community. This Court notes that a letter dated June 13, 1977, from the Virgin Islands Divi-

---

[1] 306 F.Supp. at 1325-26.

sion of Vocational Rehabilitation states that Mr. Phillip was not eligible for Vocational Rehabilitation Services because "Immigration" would not allow him enough time to remain in the Virgin Islands. It is not clear from the record whether Mr. Phillip has by now returned to his native St. Lucia; in any case, the yardstick for the availability of jobs Mr. Phillip can perform should be his residence at the time of the hearing.

■ The definition of disability as decrease in wage earning capacity in 24 V.I.C. § 251 excludes scheduled income benefits. These benefits accrue in the case of a claimant found to suffer permanent partial disability. Wage earning capacity has no place in the determination of scheduled income benefits: these benefits are for a set amount of time at two-thirds of the average weekly rate of the Virgin Islands. The length of time the benefits are given depends on the nature of the injury; with back and internal injuries, the percentage of functional loss is multiplied by two hundred to arrive at the applicable number of weeks for scheduled income benefits. Insofar as permanent partial disability was the appropriate category for a person in Mr. Phillip's situation, the District Commissioner's ruling and method of reaching it were correct. Within the category of permanent partial disability, the economic analysis necessary to deciding the question of total permanent disability does not apply. It is when the issue of total versus partial permanent disability is raised by a claimant that an economic analysis of claimant's opportunity for future employment is necessary.

■ The decision of this Court does not contest the percentage of functional loss of Mr. Phillip found by Dr. Horn. However, before that finding can be translated into an award for permanent *partial* disability, the twofold determination regarding permanent *total* disability must be made by the District Director. Only if the hearing conducted by the District Director reveals that work which Mr. Phillip is physically able to perform is available in his community will the percentage of functional loss of Mr. Phillip become relevant. That is, where total permanent disability is claimed, it must be ruled out as a possibility before permanent partial disability becomes an issue.

## JUDGMENT

This matter is before the court for review of an order of The Commissioner of Labor, as entered by the District Director of the

Division of Workmen's Compensation; and for the reasons set forth in the above memorandum,

▮ IT IS ORDERED, ADJUDGED AND DECREED that the Order of the District Director dated June 23, 1980, be reversed and the case remanded to him for further hearing and determination.